IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

TRITON MARINE FUELS LTD., S.A., et al.   *
                                      *
         v.                          *    Civil No. JFM-06-3346
                                        *
M/V PACIFIC CHUKOTKA, et al.       *
                                        *
                                        *****

OPINION

This is an *in rem* action brought by Triton Marine Fuels Ltd., S.A. ("Triton"), a

Panamanian corporation, against the M/V PACIFIC CHUKOTKA ("PACIFIC CHUKOTKA").

Triton alleges that it possessed a maritime lien after it supplied the vessel with bunkers (fuel) and

was never paid.  Now pending before me is a motion for summary judgment filed by the

PACIFIC CHUKOTKA's owner, Green Pacific A/S ("Green Pacific").  Also pending is Triton's

cross-motion for summary judgment.  For the reasons that follow, the former is granted and the

latter is denied.

I.

On December 30, 2005, Green Pacific, a Norwegian company, bareboat chartered the

PACIFIC CHUKOTKA to Intertransport Company LLC ("Intertransport").  Green Pacific

delivered the vessel to Intertransport, a Russian company, in June 2006, and Intertransport then

sub-chartered the ship to Emerald Reefer Lines, Ltd. ("ERL"), which was incorporated in the

Cayman Islands, had its principal place of business in Seattle, Washington, and was owned in

part by Neal Gordon, an American citizen.  Throughout the summer of 2006, the PACIFIC

CHUKOTKA was registered in Malta.

The PACIFIC CHUKOTKA was among a number of ships owned by Green Pacific delivering seafood to, among other destinations, the United States.  With Gordon as its representative, ERL acted as both a lender and guarantor with regard to this venture.  ERL, in its capacity as sub-charterer, would also operate the vessels and possibly purchase them at a later time.

On August 2, 2006, an employee of Ocean Transportation Services LLC ("OTS"), ERL's agent in Seattle, sought a supply of bunkers for the PACIFIC CHUKOTKA to be delivered in Odessa, Ukraine.  The request was sent to Triton's agent, Triton Marine Fuels Canada Inc. ("Triton Canada") in Quebec, Canada.

Triton Canada responded that same day by sending a confirmation ("Bunker Confirmation") to ERL.  In that transmission, Triton Canada confirmed a supply of bunkers on behalf of the seller, Triton, to be delivered to the PACIFIC CHUKOTKA in Odessa between August 3 and August 8.  The Bunker Confirmation identified ERL as the buyer acting on behalf of the vessel and "jointly and severally her Master, Owners, Managing Owners/Operators, Managers, Disponent Owners, Charterers and Agents."  It also stated, "This agreement shall be governed and construed in all particulars by the laws of the United States of America, and the parties hereby agree to the jurisdiction of the United States District Courts."

On August 5, an entity by the name of the Lawndale Group S.A., with a registered office in the British Virgin Islands, sent a receipt confirming that the bunkers had been delivered to the PACIFIC CHUKOTKA in Odessa.  Also that day, Triton transmitted an invoice to ERL in Seattle requesting $260,400 for the bunkers by November 2, 2006.  The invoice was payable through a New York bank to an account in London.

ERL never paid for the bunkers and is now insolvent.  In December 2006 Triton filed this *in rem* action against the PACIFIC CHUKOTKA to execute the maritime lien it allegedly possessed.  The vessel, which was discharging cargo in the Port of Baltimore at that time, was arrested.  In January 2007, Green Pacific posted security to obtain the release of the PACIFIC CHUKOTKA.

II.

Motions for summary judgment should be granted when the record establishes that there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  The substantive law of the cause of action determines which facts are material.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The existence of other factual disputes between the litigants does not defeat an otherwise proper motion for summary judgment if none of the material facts are in dispute.  *Id.*  A dispute about a material fact is genuine and summary judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.  *Id.*  In analyzing whether a genuine issue of material fact exists, the evidence and reasonable inferences from that evidence must be viewed in the light most favorable to the nonmoving party.  *Id.* at 255.

Where, as is the case here, both parties have filed summary judgment motions, the court applies the same standards of review.  *Loginter S.A. v. M/V NOBILITY*, 177 F. Supp. 2d 411, 414 (D. Md. 2001).  The court's role in such a situation is to "'rule on each party's motion on an individual and separate basis, determining, in each case, whether a judgment may be entered in accordance with the Rule 56 standard.'"  *Id.* (quoting *Towne Mgmt. Corp. v. Hartford Acc. &*

*Indem. Co.*, 627 F. Supp. 170, 172 (D. Md. 1985)).  In other words, "'the court must evaluate

each party's motion on its own merits, taking care in each instance to draw all reasonable

inferences against the party whose motion is under consideration.'"  *Id.* (quoting *Mingus*

*Constructors, Inc. v. United States*, 812 F.2d 1387, 1391 (Fed. Cir. 1987)).

III.

In moving for summary judgment, Green Pacific argues that because it was not a party to

the Bunker Confirmation, it is not bound by the clause providing that the "agreement shall be

governed and construed in all particulars by the laws of the United States of America . . . ."

Alternatively, Green Pacific argues that assuming it is bound by this choice of law provision, it

nevertheless is entitled to prevail because under United States law, a maritime lien does not arise

where bunkers are delivered to a foreign ship by a foreign supplier in a foreign port.[1]

Conversely, Triton contends that although Green Pacific is not personally bound by the choice of

law provision in the Bunker Confirmation, the PACIFIC CHUKOTKA – against which this *in*

*rem* action is filed – is bound by the provision and that under United States law a maritime lien

did arise in its favor when it delivered fuel in Odessa.

---

[1] Green Pacific suggests in passing that if the Bunker Confirmation's choice of law provision applied, it would merely require a choice of law analysis in accordance with United States conflicts rules, which would not necessarily dictate application of substantive United States maritime law.  However, Green Pacific overlooks the general principle that absent a contrary indication, "a contractual choice-of-law clause refers to the substantive law of the chosen jurisdiction and does not include that jurisdiction's conflicts-of-laws principles."  *See Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1297 (9th Cir. 1997).  To read the choice of law clause as requiring an additional conflicts analysis would undermine the predictability sought by the clause itself.  *See id.*

A.

There is a clear split of authority on the question of whether a contractual clause incorporating the law of a jurisdiction creating a maritime lien for the provision of necessaries is enforceable in an action involving a third party.  At least two courts have squarely held that the clause is not enforceable in such an action while Frederic Smalkin, formerly a judge on this Court, has ruled to the contrary.  *Compare Redcliffe Ams. Ltd. v. M/V TYSON LYKES*, 806 F. Supp. 69, 71 (D.S.C. 1992), *rev'd on other grounds*, 996 F.2d 47 (4th Cir. 1993), *and Trans-Tec Asia v. M/V HARMONY CONTAINER*, 435 F. Supp. 2d 1015, 1036 (C.D. Cal. 2005), *with Ryan-Walsh, Inc. v. M/V OCEAN TRADER*, 930 F. Supp. 210, 219 (D. Md. 1996).

The holding in *Redcliffe* and *Trans-Tec Asia* is derived from the principle that "'the rights of third persons cannot be affected by the intent of the parties to the contract.'"  *Redcliffe*, 806 F. Supp. at 71 (quoting *Rainbow Line, Inc. v. M/V TEQUILA*, 480 F.2d 1024, 1026 (2d Cir. 1973)). Moreover, in order to protect the rights and interests of third parties, it is settled that a maritime lien cannot be established by the substantive terms of a contract.  *Bominflot, Inc. v. The M/V HENRICH S*, 465 F.3d 144, 146 (4th Cir. 2006).  Thus, the holding in *Redcliffe* and *Trans-Tec Asia* would prevent contractual parties from doing indirectly (by choosing the law of a nation that recognizes maritime liens for necessaries) that which they are prohibited from doing directly.

On the other hand, although the principle that the intent of parties to a contract should not be able to affect the rights of third parties is self-evidently fair as a general matter, its application presents conceptual difficulty where, as here, the plaintiff's claim is not a personal claim against a third party but an *in rem* claim against a vessel.  Arguably, in such a case the focus properly is

upon whether the purchaser of necessaries under a contract containing a choice of law provision

had the authority to bind the vessel against which the lien is sought to be asserted when it made

the contract.  This reasoning would support the result reached by Judge Smalkin in *Ryan-Walsh*.[2]

Fortunately, I need not choose among these conflicting cases and decide whether the

clause in the Bunker Confirmation choosing United States law is enforceable in an action

involving third party rights.  Rather, I will assume that the choice of law provision is

enforceable.  Even if that is so, for the reasons that follow, I find that under United States law no

maritime lien was created in favor of Triton as a result of the bunkers transaction.[3]

---

[2] Green Pacific contended at oral argument that even if I followed the *Ryan-Walsh* approach, I should still rule in its favor because ERL lacked the authority to subject the PACIFIC CHUKOTKA to a maritime lien in light of a "non-lien" clause in the contract between Green Pacific and Intertransport.  I need not reach that contention.

[3] If I found the choice of law clause unenforceable, I would apply the federal maritime choice of law rules articulated in *Lauritzen v. Larsen*, 345 U.S. 571 (1953), and its progeny.  *See Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1296 (9th Cir. 1997).  In *Lauritzen*, the Supreme Court outlined seven factors governing a choice of law analysis in the maritime tort context.  345 U.S. at 583-91.  Since then, courts have used the *Lauritzen* factors as guidance in maritime lien cases.  *See Ocean Ship Supply, Ltd. v. MV LEAH*, 729 F.2d 971, 974 (4th Cir. 1984); *Loginter S.A. v. M/V NOBILITY*, 177 F. Supp. 2d 411, 417 (D. Md. 2001).  In these cases, the focus has been primarily on the supplier's place of incorporation, the location of the port where the supplies were provided, and the nation in which the ship was registered.  *See Ocean Ship Supply*, 729 F.2d at 974 (refusing to apply United States law where a Canadian supplier delivered supplies in Canada to a vessel registered in Greece); *Loginter*, 177 F. Supp. 2d at 417 (applying Russian law where a Russian supplier delivered fuel to a Maltese ship in a Russian port).

These precedents indicate that in the instant action, were I called upon to engage in a traditional choice of law analysis, application of United States law would be inappropriate.  As in *Ocean Ship Supply* and *Loginter*, a foreign supplier, Triton, delivered fuel in a foreign port, Odessa, to a foreign ship, the PACIFIC CHUKOTKA.  The fact that the vessel was seized in Baltimore would be immaterial to the analysis.  *See Ocean Ship Supply*, 729 F.2d at 974 (referring to the vessel's arrest in a United States port as merely a "fortuitous incident in the context of this litigation").

B.

Under the Federal Maritime Lien Act ("FMLA"), 46 U.S.C. § 31342(a), "a person providing necessaries to a vessel on the order of the owner or a person authorized by the owner . . . has a maritime lien on the vessel . . . [and] may bring a civil action in rem to enforce the lien . . . ." The right created by this section is a "powerful" one, *Bominflot*, 465 F.3d at 147, because a maritime lien "'grants the creditor the right to appropriate the vessel, have it sold, and be repaid the debt from the proceeds.'" *Marine Oil Trading Ltd. v. Motor Tanker PAROS*, 287 F. Supp. 2d 638, 640 (E.D. Va. 2003) (quoting *Silver Star Ents. v. SARAMACCA MV*, 82 F.3d 666, 668 (5th Cir. 1996)). As happened in this case, a ship can be arrested upon the filing of the lien, and until a bond or other security is posted, the ship must remain moored in the port of arrest. While so detained, not only is the vessel subjected to the direct costs of daily maintenance but also those who have invested in its voyage face the substantial indirect damages caused by a delay in transit.

Because the leverage given to holders of maritime liens is thus so extraordinarily strong, the United States is only one of a few nations recognizing a maritime lien for necessaries, such as bunkers. *See Bominflot*, 465 F.3d at 147; *Marine Oil Trading*, 287 F. Supp. 2d at 640-41. For the same reason, "maritime liens are to be strictly construed." *Tramp Oil & Marine, Ltd. v. M/V MERMAID I*, 805 F.2d 42, 46 (1st Cir. 1986). Likewise, because "statutes are presumed to lack an extraterritorial extension in the absence of explicit language to the contrary," *Trans-Tec Asia v. M/V HARMONY CONTAINER*, 437 F. Supp. 2d 1124, 1134 (C.D. Cal. 2006), it "makes sense that the United States have some interest in the transaction before the maritime lien remedy can be properly asserted." *Id*. at 1136.

Here, Triton asserts that the United States has an interest in the bunkers transaction between itself and ERL for four reasons: (1) the transaction was agreed to by Neal Gordon, a citizen of the United States, as principal of a company (ERL) that had its only place of business in the United States; (2) Gordon, along with his various companies (all of which operate within the United States), "was central to the entire Green Pacific/PACIFIC CHUKOTKA/Emerald matrix"; (3) "the purpose of this complicated framework was for the vessels to trade seafood, *inter alia*, to the [United States]"; and (4) the negotiations for the transaction were carried out by ERL in the United States.

These connections to the United States might well be sufficient to subject ERL to personal jurisdiction in the United States as to a claim filed against it by Triton.  However, as Triton itself emphasizes in its argument concerning the validity of the choice of law provision, what is involved here is not an *in personam* claim but an *in rem* claim against the PACIFIC CHUKOTKA.  Thus, the materiality of the United States ties relied upon by Triton must be measured by whether they establish any policy interest of the United States that justifies the assertion of United States law against the commandments of the laws of other nations that do not recognize maritime liens for necessaries.  Clearly, they do not.

This is not an area of the law that would be well served by drawing fine distinctions based upon varying fact patterns.  The simple fact of the matter is that wherever ERL may have conducted its operations, wherever the seafood being traded via the PACIFIC CHUKOTKA may have been intended to be delivered, and wherever the negotiations for the ERL/Triton bunkers transaction may have been negotiated, this case involves the provision of goods by a foreign plaintiff to a foreign flag vessel in a foreign port.  Courts in the United States have held that

under such circumstances the FMLA is not to be applied extraterritorially to confer a maritime lien upon the plaintiff.  *See Trin. Foundry & Fabricating, Ltd. v. M/V K.A.S. CAMILLA*, 966 F.2d 613, 617 (11th Cir. 1992) ("[Section] 31342 does not provide for a maritime lien for goods and services supplied by a foreign plaintiff to foreign flag vessels in foreign ports."); *Tramp Oil*, 805 F.2d at 46 ("The primary concern of the [FMLA] is the protection of American suppliers of goods and services."); *Trans-Tec Asia*, 437 F. Supp. 2d at 1134-37 (rejecting a foreign supplier's maritime lien claim where the bunkers had been supplied to a Malaysian vessel in Korea).  To depart from this well established case law would be to ignore the legitimate interests of other nations and inject unnecessary uncertainty into the dealings of those involved in maritime trade.

A separate order effecting the rulings made in this opinion is being entered herewith.

Date: August 31, 2007                    /s/_____

                                         J. Frederick Motz
                                         United States District Judge