## UNITED STATES DISTRICT COURT
### DISTRICT OF MARYLAND

CHAMBERS OF
J. FREDERICK MOTZ
UNITED STATES DISTRICT JUDGE

101 WEST LOMBARD STREET
BALTIMORE, MARYLAND 21201
(410) 962-0782
(410) 962-2698 FAX

August 31, 2007

Memo to Counsel Re: *Triton Marine Fuels Ltd., S.A., et al. v. M/V PACIFIC
CHUKOTKA, et al.*
Civil No. JFM-06-3346

Dear Counsel:

Green Pacific A/S ("Green Pacific") has filed a motion for summary judgment as to the
*in personam* claims asserted by Bridge Oil Ltd. ("Bridge Oil") and Bunker Holdings, Ltd.
("Bunker Holdings").  Bridge Oil has since moved to dismiss its claim against Green Pacific,
while Bunker Holdings has opposed Green Pacific's summary judgment motion.  For the reasons
that follow, Bridge Oil's motion to dismiss will be granted, thereby rendering Green Pacific's
motion for summary judgment, as well as its motion to enjoin Bridge Oil's separate action in
Nigeria, moot.  Meanwhile, Green Pacific's motion for summary judgment as to Bunker
Holdings will be granted.  In both instances, the security deposited previously by Green Pacific
to obtain the release of its vessel, the M/V PACIFIC CHUKOTKA ("PACIFIC CHUKOTKA"),
will be returned.

### *Bridge Oil's Motion for Voluntary Dismissal*

In its claim for unjust enrichment against Green Pacific, Bridge Oil alleges that it
supplied fuel to one of Green Pacific's vessels, the M/V PACIFIC KAMCHATKA ("PACIFIC
KAMCHATKA"), in September 2006 in Vladivostok, Russia.  According to Bridge Oil, the fuel,
which the ship's charterer never paid for, enabled the PACIFIC KAMCHATKA to continue
operating and earning money for Green Pacific.  To secure this claim, Bridge Oil attached the
PACIFIC CHUKOTKA while it docked in Baltimore this past winter.

To obtain the release of the PACIFIC CHUKOTKA at that time, Green Pacific posted
$172,000 in connection with Bridge Oil's claim.  Green Pacific has since moved for summary
judgment as to that claim, and has also filed a separate motion to enjoin Bridge Oil from
proceeding with a claim it has instituted in Nigeria against the PACIFIC KAMCHATKA.

In response, Bridge Oil has moved pursuant to Rule 41(a)(2) to dismiss its claim in this

Court against Green Pacific.[1]  Under Rule 41(a)(2), "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper."  Whether to issue such an order is committed to the district court's discretion, and in exercising that discretion the court should focus primarily on protecting the defendant's interests.  *Davis v. USX Corp.*, 819 F.2d 1270, 1273 (4th Cir. 1987).  However, "[a] plaintiff's motion to voluntarily dismiss a claim should not be denied absent plain legal prejudice to the defendant."  *Ellett Bros. v. United States Fid. & Guar. Co.*, 275 F.3d 384, 388 (4th Cir. 2001).  In applying this standard, a court may consider, "(1) the plaintiff's diligence in moving for a voluntary dismissal, (2) the stage of the litigation, including the defendant's effort and expense in preparing for trial, and (3) the adequacy of the plaintiff's explanation for the need to dismiss."  *Fid. Bank PLC v. N. Fox Shipping N.V.*, No. 06-1299, 2007 U.S. App. LEXIS 16793, at *9 (4th Cir. July 13, 2007).[2]

Green Pacific insists that in accordance with these rules dismissal would be inappropriate, because it has engaged in discovery and filed a motion for summary judgment against Bridge Oil, as well as a motion to enjoin Bridge Oil from prosecuting its action in Nigeria.  (Green Pacific's Opp'n Mem. at 4.)  Green Pacific maintains that it would be prejudicial to permit Bridge Oil to avoid what Green Pacific believes will be a favorable ruling on its pending summary judgment motion.  (*Id.* at 4-5.)

Green Pacific's arguments are unavailing.  As an initial matter, although discovery has indeed taken place, it has consisted primarily of a telephone deposition completed in one day.  Additionally, the claims asserted by the other plaintiffs in this multi-party proceeding would have necessitated discovery and the filing of other motions for summary judgment.  In fact, because a common defense (choice of law) applied to Bridge Oil and Bunker Holdings' actions, Green Pacific submitted just one motion addressing those claims.  In other words, Green Pacific has not expended considerable additional effort in defending Bridge Oil's action, and as a result, the dismissal of Bridge Oil's suit would not substantially prejudice Green Pacific.

Moreover, just one month ago, the Fourth Circuit rejected arguments identical to those put forth by Green Pacific here.  *See Fid. Bank PLC*, 2007 U.S. App. LEXIS 16793, at *10-13.  For example, the defendants in that case argued that a voluntary dismissal would deprive them of a favorable ruling on their pending motion for summary judgment and leave them susceptible to another action by plaintiff.  *Id.* at *10-11.  Although the Fourth Circuit had said in an earlier

---

[1] Green Pacific maintains that because Bridge Oil seeks to dismiss only one count of its Second Amended Verified Complaint, an amendment under Rule 15(a) would be more appropriate than a motion for voluntary dismissal.  (Green Pacific's Opp'n Mem. at 2, 4.)  This position is unfounded given that Bridge Oil's pending motion would eliminate its lone claim against Green Pacific (the other count names the charterers as defendants).  The issue is also academic, because the Fourth Circuit has explained that "similar standards govern the exercise of discretion under either [Rule 15(a) or Rule 41(a)(2)]."  *Skinner v. First Am. Bank of Va.*, No. 93-2493, 1995 WL 507264, at *2 (4th Cir. Aug. 28, 1995).

[2] In accordance with Fed. R. App. P. 32.1(a), the Fourth Circuit now permits unrestricted citation of its unpublished opinions issued on or after January 1, 2007.

decision that "'denial of voluntary dismissal is appropriate where summary judgment is imminent,'" *Skinner*, 1995 WL 507264, at *2 (quoting *Davis*, 819 F.2d at 1274), the court held in this more recent case that because Rule 41(a)(2) applies only where an answer or motion for summary judgment has been submitted, "'the mere filing of . . . a motion for summary judgment [is] not, without more, [] a basis for refusing to dismiss without prejudice.'" *Fid. Bank PLC*, 2007 U.S. App. LEXIS 16793, at *10-11 (alteration in original) (quoting *Andes v. Versant Corp.*, 788 F.2d 1033 n.4 (4th Cir. 1986)). The court added, "'[T]he prospect of a subsequent lawsuit does not constitute prejudice for purposes of Rule 41(a)(2).'" *Id.* at *11 (quoting *Ellett Bros.*, 275 F.3d at 388-89).

At the hearing, Green Pacific suggested that *Fidelity Bank* was not controlling, because Bridge Oil had not adequately explained its need for the dismissal. However, I am satisfied with Bridge Oil's proffered justification – that dismissal of this action would leave resolution of the outstanding claims to a court in Nigeria where the PACIFIC KAMCHATKA has been arrested. Because Bridge Oil has commenced the Nigerian action against the PACIFIC KAMCHATKA, the ship that it actually supplied, it makes sense to dismiss its claim here. As a result, Bridge Oil's motion to dismiss will be granted, and the $172,000 that Green Pacific paid to obtain the release of the PACIFIC CHUKOTKA will be returned. This ruling eliminates the need to reach Green Pacific's motion for summary judgment against Bridge Oil, as well as its motion to enjoin Bridge Oil's Nigerian action.

### *Green Pacific's Motion for Summary Judgment as to Bunker Holdings*

Green Pacific's motion for summary judgment against Bunker Holdings will be granted. These claims arose after Bunker Holdings supplied fuel to the PACIFIC CHUKOTKA in St. Petersburg, Russia on two occasions in October and November 2006. In both instances, the vessel's charterer, Intertransport Company LLC ("Intertransport"), ordered the bunkers but never paid. Bunker Holdings seeks to hold Green Pacific liable on the theory that this fuel permitted the PACIFIC CHUKOTKA to continue operating and earning money for its owner.

Bunker Holdings' claims rely on Russian law, but as Green Pacific notes, the contracts governing both supplies of bunkers, as well as Bunker Holdings' standard terms and conditions, call for Greek law. In particular, the confirmations that Bunker Holdings emailed to Intertransport regarding the two bunker deliveries said, "Buyers accept and agree that this agreement, for any disputes arising herein is subject to Greek law and the exclusive jurisdiction of the courts of Piraeus." (Confirmations, Ex. 5 & Ex. 8 to Green Pacific's Mem.) The confirmations also referenced Bunker Holdings' standard terms and conditions, which contain a jurisdiction clause stating:

> The Agreement is subject to the Law and Jurisdiction of the courts of Greece. So whoever that nothing in this clause shall, in the event of a breach of the Agreement by the Customer, preclude [Bunker Holdings] from taking any such actions as it shall in its absolute discretion consider necessary to enforce, safeguard or secure its rights under the Agreement in any court or tribunal or any state or country.

(Standard Terms and Conditions ¶ 13.01, Ex. 9 to Green Pacific's Mem.)

Choice of law provisions, such as this one between Bunker Holdings and Intertransport, are "presumptively valid and should be given full effect." *See Marine Oil Trading Ltd. v. Motor Tanker PAROS*, 287 F. Supp. 2d 638, 641 (E.D. Va. 2003). Moreover, an owner such as Green Pacific, although not a party to a bunker supply contract, can invoke that contract's choice of law clause as a defense. *See Madredeus Shipping Co. v. Century Bridge Chartering Co.*, No. 00-414-CIV, 2000 WL 1205336, at *5 (S.D. Fla. Feb. 11, 2000). In fact, Green Pacific may raise any defense that the charterer who entered into the contract would have been able to assert to defeat plaintiff's claim. *See id.* A number of courts, including the Fourth Circuit, have reached similar conclusions. *See Bominflot, Inc. v. The M/V HENRICH S*, 465 F.3d 144, 148 (4th Cir. 2006) (avoiding "thorny conflicts of law questions" by enforcing a choice of law provision); *Motor Tanker PAROS*, 287 F. Supp. 2d at 645 (applying English law in accordance with a choice of law provision); *Marine Oil Trading Ltd. v. M/V SEA CHARM*, No. Civ. A. 02-2281, 2003 WL 292309, at *4 (E.D. La. Feb. 10, 2003) (explaining that as a general rule the plaintiff could not avoid the choice of law clause in its own contract).

Ignoring these precedents both in its opposition memorandum and at the hearing held on August 28, 2007, Bunker Holdings continues to attach significance to the fact that Green Pacific was not a party to the bunker contracts containing the choice of law provisions. Because it therefore deems the choice of law clauses unenforceable in its action against Green Pacific, Bunker Holdings engages in a traditional choice of law analysis and argues that such an inquiry points to Russian maritime law as controlling. Bunker Holdings also suggests that its position is bolstered by Judge Bennett's finding earlier in this litigation that Russian law *may* apply to this case.

These contentions are without merit. A court employs the traditional choice of law factors outlined in *Lauritzen v. Larsen*, 345 U.S. 571 (1953) and its progeny only where there is no contractual provision to apply, *see Bominflot*, 465 F.3d at 148; *Chan v. Soc'y Expeditions, Inc.*, 123 F.3d 1287, 1296 (9th Cir. 1997), and the cases cited above demonstrate that the Greek choice of law clause is enforceable here. As for Bunker Holdings' reliance on Judge Bennett's finding, he issued that ruling in the course of a post-attachment hearing, where the choice of law issues were presumably not as well developed as they are now.

Bunker Holdings also mistakenly insists that its standard terms and conditions mandate the application of Russian law. (Bunker Holdings' Opp'n Mem. at 2-3.) As noted above, the standard terms and conditions' jurisdiction clause calls for Greek law but also reads, "[N]othing in this clause shall . . . preclude [Bunker Holdings] from taking any such actions as it shall in its absolute discretion consider necessary to enforce, safeguard or secure its rights under the Agreement in any court or tribunal or any state or country." (Standard Terms and Conditions ¶ 13.01, Ex. 9 to Green Pacific's Mem.) However, rather than allow Russian law in contravention of the explicit Greek choice of law clause, it is more likely that the quoted language simply enables Bunker Holdings to protect its interests in any *forum*. Other courts have construed similar language in this manner. *See Motor Tanker PAROS*, 287 F. Supp. 2d at 645; *M/V SEA CHARM*, 2003 WL 292309, at *6.

In conclusion, because Bunker Holdings has not shown the viability of its claims under Greek law, Green Pacific's motion for summary judgment will be granted and the $307,500 that Green Pacific paid in relation to Bunker Holdings' claims to secure the release of the PACIFIC

CHUKOTKA will be returned.[3]

   Despite the informal nature of this letter, it should be flagged as an opinion and docketed as an order.

          Very truly yours,


         /s/_____
         J. Frederick Motz
         United States District Judge

---

[3] Bunker Holdings submits that Green Pacific must establish whether or not Greek law would recognize its claims.  (Bunker Holdings' Opp'n Mem. at 1.)  However, Bunker Holdings offers no authority to support this position.  In any event, as plaintiff, Bunker Holdings bears the burden of demonstrating that Greek law permits these claims, and as discussed above, Bunker Holdings has not even attempted to fulfill this obligation.